**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **UNITED STATES,** | ) | **1:25-CR-00423-UNA** |
| **Plaintiff** | ) | |
| **v.** | ) | |
| **FRANK WASZUT,** | ) | **FRANK WASZUT** |
| **Defendant** | ) | **Defendant** |

**DEFENDANT FRANK WASZUT'S MOTION TO DISMISS**

Defendant Frank Waszut, through counsel, respectfully moves this Court to dismiss the criminal complaint The charge alleging a violation of 18 U.S.C. § 875(c)—fails as a matter of law because the alleged statement does not constitute a "true threat" under the First Amendment.

A one count indictment alleges that "On or about August 20, 2025, in the Northern District of Georgia and elsewhere, the defendant, Frank Andrew Waszut, consciously disregarding a substantial risk that his communication would be viewed as threatening violence, knowingly transmitted a communication in interstate foreign commerce, to the State of Georgia and other places, that contained a threat to injure Individual #1, a deportation officer employed by the United States Department of Homeland Security; specifically, the defendant, Frank Andrew Waszut, posted a message to Instagram, an international social media platform, which identified and displayed photographs of Individual #1 and stated in part,

"And he's an ICE agent this is him unmasked and also his wife[ ... ]. So, go ahead and make him famous. And if you see this motherfucker out in public give him the cell block one treatment. You know, catch him when he's alone." The indictment omits the last line of the statement in which Mr. Waszut says comically "Bitch!"

First, the prosecution violates the First Amendment's Free Speech Clause because it seeks to punish Mr. Waszut for statements, he made during political unrest around ICE arrests that were hyperbole, sarcasm and humor. Because such non-serious expressions fail to convey an intent to commit an unlawful act of violence, the First Amendment shields Mr. Waszutt from prosecution for this speech. *Virginia v. Black,* 538 U.S. 343, 359 (2003). Second, the prosecution violates the Fifth Amendment's Due Process Clause because it deploys a threat statute that is void for vagueness. The statute fails to give a person of ordinary intelligence notice of what conduct is forbidden – it provides no fair warning of what statements will qualify as criminal threats. *Pappachristou v. Jacksonville*, 405 US. 156 (1972).

## I. INTRODUCTION

The alleged communication in question is a personal Instagram post by Frank Waszut on or about August 20, 2025, stating:

"Signing up for ICE means you'll separate brown families with no due process to make a racist pedophile happy. Right, Brian Musheno? You get to have a happy family, but no one else can? Your wife is a labor and delivery nurse. She brings kids into this world and you separate them from their parents. You should have worn a mask like your buddies. LMAO."

A video with the same picture and similar commentary was also posted adding, "And he's an ICE agent this is him unmasked and also his wife[ ... ]. So, go ahead and make him famous. And if you see this motherfucker out in public give him the cell block one treatment. You know, catch him when he's alone. Bitch!"

Mr. Waszut's Instagram account describes him and his content as "Your friendly neighborhood autistic, bi, ginger DILF (an acronym for Dad I'd Like to F*ck"), roasting MAGA (an acronym for Making America Great Again, to reference supporters of President Trump) 24/7," distinctly identifying his site as a place for satirical political commentary.

There were no complaints made, and no one contacted law enforcement perceiving his speech as a true threat. Mr. Waszut is not a part of any organization and is not a public figure, had no direct contact with anyone regarding the statement and believed that his political speech was protected.

## II. Legal Standard

Mr. Waszut moves to dismiss this indictment before trial as it seeks to punish him for speech protected under the First Amendment. He also challenges the statute being used to prosecute him because it fails to provide fair warning of what it proscribes in violation of the Fifth Amendment. This motion is the necessary and proper way to challenge Mr. Waszut's prosecution. Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); see FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); see also, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to

trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. See *Flores,* 404 F.3d at 325. Here, the issues are a pure question of law in the presence of undisputed facts.

## III. Argument

### A. The statements are not "true threats" as a matter of law

#### 1. True threats require a serious expression of intent to commit violence

The First Amendment permits criminal punishment only for "true threats," defined as, "serious expression[s] of an intent to commit an act of unlawful violence." *Virginia v. Black*, 538 U.S. 343, 359 (2003) The Eleventh Circuit applies this standard in evaluating § 875(c) charges.

#### 2. The alleged statement contains no expression of violence

The statement attributed to Mr. Waszut contains no threat of harm, expresses no intent to injure, does not identify a weapon, plan, or timeframe. Instead, it consists of political criticism, personal insult ("Bitch!"), and sarcasm ("LMAO"). Courts consistently hold that absent language expressing violence, a statement cannot qualify as a true threat. Because the required element, a threat of violence, absent, the complaint fails as a matter of law. Stating he get the "cell clock c treatment" is clearly hyperbole and fantasy, since it is directly from a rap song by Kendrick Lamar discussing another rapper so its metaphorical, but otherwise would be conditional of the ICE agent being in jail. True threats are specific to time, place and manner and means, all of which are lacking in Mr. Waszut's statements.

### B. Mr. Waszut's statements are protected political speech

### 1. Political hyperbole is constitutionally protected

The Supreme Court has long protected crude or offensive political speech, "[T]he First Amendment protects vehement, caustic, and sometimes unpleasantly sharp attacks." *Watts v. United States*, 394 U.S. 705 (1969). Mr. Waszut's statement criticizes immigration enforcement (ICE), expresses moral condemnation, and uses rhetorical exaggeration (the cell block c treatment). This is core political speech**,** entitled to the highest constitutional protection.

Using "LMAO" and "Bitch" at the end of each statement emphasizes the hyperbolic and humor intended by the posts, along with identifying his page as "roasting MAGA 24/7."

### 2. Context Confirms No Threat

Context is critical in evaluating alleged threats. Here, the statement was posted on Instagram (a public platform for personal commentary), it was not a private or direct communication, it contains no follow-up conduct suggesting intent, it ends with "LMAO," signaling mockery—not menace.

"LMAO" is an acronym for "laughing my ass off," which when placed at the end of any statement signals it is supposed to be funny, it's purpose is to negate any negative connotation. No reasonable observer could interpret this as a serious expression of violence. When Mr. Waszut posted the picture and his video on Instagram in August, 2025, hundreds of thousands of people were also posting on their personal Instagram accounts expressing outrage at the behavior of masked ICE agents, and the manner in which they were taking people out of communities. Mr. Waszut did not send anything directly, and did not have any connections in the federal government or who were ICE agents, so he had no expectation that anyone would be threatened by his speech.

Mr. Waszut had no expectation that anyone would be threatened, and in fact no one was because no one reported any threat.

"The reactions of the recipients of a threat can be useful in determining whether an objectively reasonable person would interpret a statement as a threat. ***United States v. Daughenbaugh*, 49 F.3d 171, 173-74** (5th Cir. 1995)(noting the relevance of a victim's "extra security measures" in the wake of a threat). This analysis is in alignment with important persuasive authority: the Tenth Circuit's opinion in *United States v. Pope, 613 F.3d 1255* (10th Cir. 2010), which other circuits have endorsed as well. That opinion, authored by then-Judge Gorsuch, explained that "[t]o warrant dismissal, it must be clear from the parties' agreed representations about the facts surrounding the commission of the alleged offense that a trial of the general issue would serve no purpose." *Id*. at 1261 (emphasis in original). In this case there is no factual dispute and more importantly there is no one that reported feeling threatened.

The Fifth Circuit said, "Even 'latent factual disputes over circumstances surrounding the commission of the alleged offense can sometimes prevent pretrial determination of a defense." Id. (emphasis in original) (citing *United States v. Reed, 114 F.3d 1067*, 1070 (10th Cir. 1997), *United States v. Burger, 25-51021 (5th Cir. 2025)*. Here, the district court's findings resolved a disputed factual question: whether the context of the Church experience would lead a reasonable player to believe that Burger was role-playing rather than expressing a sincere intent to commit violence." *Id.* There is no context to decipher here, this was a private person on his personal Instagram making political statements using hyperbole and sarcasm to express his views. One statement ended with the acronym "laugh my ass off" indicating it was supposed to be funny on its face.

The Fifth Circuit in *Burger* continued, "[W]hile the parties to this case agree Burger made his statements in the Church experience, they disagree as to how that context affects the "true threats" analysis—and that analysis would be materially incomplete without further evidence, particularly the testimony of the two tipsters. *See* United States v. Rodriguez-Rivera, 918 F.3d 32, 35 (1st Cir. 2019) (noting that "[n]o circuit" allows dismissal under **Rule 12** "on an incomplete or disputed factual record"). *Id.*

The Fifth Circuit determined that a Rule 12 ruling was not appropriate with facts in to be determined to understand context, however in the current case it is appropriate, specifically because there are no contextual factual questions to determine and there was no one who reported a threat or actually interpreted Mr. Waszut's behavior as such.

**C. No subjective mens rea**

Under *Counterman v. Colorado*, 600 U.S. 66 (2023), the First Amendment requires proof that the defendant acted with at least recklessness, the defendant must be aware of a substantial risk that the statement would be viewed as a threat and consciously disregard that risk. That requirement cannot be met here. Mr. Waszut had no reason to believe his political speech was a crime. In fact, many of Mr. Waszut's friends and neighbors were posting similar posts on their personal socia media accounts using similar language and have not been prosecuted. He had no reasonable reason to believe that using the similar protected political words using sarcasm and hyperbole would be taken as a direct threat. Nothing in the statement suggests violence, signals intent to harm at any time or place, or creates a risk that it would be interpreted as a threat. Even the statement in the video about giving them the "cell block c treatment, you know, get them when they are alone, " is a term conditional to being in ICE detention, which would be impossible. It is

blatantly unrealistic that a friend of Mr. Waszut would be guarding an ICE agent in a jail cell, so it is obviously a fantasy scenario. Because the statements are plainly rhetorical and non-violent, there is no plausible basis to infer that Mr. Waszut acted recklessly.

**D. Dismissal is the appropriate remedy under 12(b)**

**1. This is a legal insufficiency, not a factual dispute**

The government may argue that whether a statement is a "true threat" is a question for the jury. While that is often true, it does not apply here. Courts may dismiss under Rule 12(b) where the facts are undisputed; and the alleged conduct does not constitute a crime as a matter of law. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). In this case, the statement is fully set out in the complaint, there are no disputed facts relevant to its content, the issue is purely legal: whether the statement qualifies as a threat

**2. Nobody reported a threat because there was no threat**

In *United States v. Burger*, the Fifth Circuit held that dismissal was improper where the determination of a "true threat" depended on contested factual context. In that case an eighteen year old in Round Rock, Texas who made statements online within a game called Roblox inside a "Church" environment in which everyone spoke through characters, embodied as avatars. Thousands of players were interacting in the "Church" through avatars and three different complaints were called in to the FBI from other players who perceived the language in question to be a threat.

By contrast, Mr. Waszut's statement contains no direct threat and involves pure political criticism**.** The statements made presents no factual ambiguity requiring jury resolution**.**

Accordingly, this case presents a legal deficiency, not a factual dispute, and is properly resolved at the Rule 12 stage.

### E. Criminalizing Mr. Waszut's protected speech would violate the First Amendment

Mr. Waszut's statements are protected by the First Amendment. The First Amendment commands that speech be free from government interference. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011). Because prosecution under 18 U.S.C. § 875(c) involves punishment of pure speech, First Amendment protections apply. See *Watts v. United States*, 394 U.S. 705, 707 (1969) (holding in the context of 18 U.S.C. § 871, which criminalizes threats against the President, that statutes which make criminal pure speech must be interpreted with the commands of the First Amendment in mind). "What is a threat must be distinguished from what is constitutionally protected speech." Id. The First Amendment states in relevant part, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The Free Speech Clause exists to protect discourse on all matters. The First Amendment protects speech even when the subject or manner of expression is uncomfortable or unconventional. The "bedrock principle underlying the First Amendment" is "that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414 (1989) (flag burning prosecution violated First Amendment). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995). Rather, a "hallmark" of free speech is "to allow 'free trade in ideas' - even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (holding Va. cross burning statute unconstitutional because statute presumed intent to intimidate from act of burning a cross) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes,

J., dissenting)). The First Amendment permits restrictions upon the content of speech only in a few limited areas. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). In this case, the category of unprotected speech the prosecution must establish falls under "true threats" of violence. Id. To be a "true threat," the statement, "when taken in context," must convey a real possibility that violence will follow. Id. at 74. This distinguishes a "true threat" from jests or hyperbole. Id. True threats are "serious expressions" conveying that the speaker means to "commit an act of unlawful violence to a particular group or individuals." Id. (quoting Black, 538 U.S. at 359). The government must prove a "true threat" to pierce the First Amendment's shield, regardless of the speaker's intent. *See Watts*, 394 U.S. at 708. For a communication to be a threat under § 875(c), the Fifth Circuit requires "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers*, 104 F.3d 76, 79 (5th Cir.1997)). A key to distinguishing "true threats" from speech protected by the First Amendment is if the alleged threat had an "immediacy, or clarity of purpose." *Shackelford v. Shirley*, 948 F.2d 935, 939 (5th Cir. 1991). The Second Circuit, in interpreting § 875, reasoned that to be a "true threat" the statement must "on its face and in the circumstances in which it is made" be so "unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). Such a requirement is consistent with the First Amendment, which allows for prosecution when "a communication has become 'so interlocked with violent conduct as to constitute for all practical purposes part of the (proscribed) action itself.'" Id. (quoting T. Emerson, The System of Freedom of Expression, 329 (1970)). Furthermore, "[i]n order to convict, a fact finder must determine that the recipient of the in-context threat reasonably feared it would be carried out." *Morales,* 272 F.3d at 287 (quoting

*Myers*, 104 F.3d at 80). In deciding whether speech is an unprotected "true threat," context is critical. See *Watts,* 394 US at 706, 708 (considering the context, the expressly conditional nature of the statement, and the reaction of the listeners when evaluating whether a statement is a true threat).

If the statements at issue were deemed criminal, and political criticism of government actors were banned, it would have a chilling effect on hyperbolic speech, and ordinary citizens would risk felony charges for expressing dissent. Such a result is incompatible with the First Amendment, and the underpinning of our countries birth.

## IV. CONCLUSION

The statements alleged in the complaint do not constitute "true threats" under 18 U.S.C. § 875(c) as a matter of law. It is protected political speech lacking any direct and specific expression of violence that no one perceived as a threat, and ultimately lacks required mens rea. The defect is legal and not factual, thus, dismissal under Rule 12(b) is appropriate.

## V. PRAYER FOR RELIEF

WHEREFORE, Defendant Frank Waszut respectfully requests that this Court:

1. Dismiss the complaint in its entirety;
2. Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of May, 2026.

Respectfully submitted,
***/s/ Amber Vazquez***
Texas Bar Number 24039225

Vazquez Law Firm, PLLC
608 West 12th St.
Austin, Texas 78701
512-220-8507 office
512-480-0760 facsimile
amber@CriminalLawAustin.co

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2026, I electronically transmitted the attached document, Defendant's Agreed Motion the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Zachary J. Kelehear**
The Findling Law Firm, P.C.
3575 Piedmont Rd NE
Ste Tower 15, Suite 1010
Atlanta, GA 30305
404-460-4500
Fax: 404-460-4501
Email: zack@findlinglawfirm.com

**Brent A. Gray**
Office of the United States Attorney-ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6077
Email: brent.gray@usdoj.gov

**Eric John White**
DOJ-USAO
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303

404-581-6045
Email: eric.white@usdoj.gov

***/s/ Amber Vazquez***
Texas Bar Number 24039225

Vazquez Law Firm, PLLC
608 West 12th St.
Austin, Texas 78701
512-220-8507 office
512-480-0760 facsimile
Info@CriminalLawAustin.com